**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dexter Donald, Individually and as next friend of his minor child, CHAD DONALD,<br><br>Plaintiff,<br><br>vs.<br><br>United States of America,<br><br>Defendant. | No. CV09-8044-PCT-DGC<br><br>**ORDER** |

Defendant United States of America moves for summary judgment on Plaintiff Dexter Donald's negligence and loss of consortium claims. Doc. 43. Plaintiff does not object to Defendant's motion on the loss of consortium claim, but does oppose the motion on the negligence claims. Doc. 45. For the reasons stated below, the Court will grant Defendant's motion in full.

**I.   Background.**

Plaintiff's minor son, Chad Donald, was injured on the grounds of the Tuba City Boarding School, an institution owned and operated by Defendant United States of America. Plaintiff filed suit under the Federal Tort Claims Act ("FTCA") on behalf of his son alleging that Defendant was negligent in supervising Chad and in maintaining the area where Chad was injured. Doc. 1 at 3, 4. The complaint asserts that Chad "stepped into a dip or depression in the ground," which caused him to fall and sustain injuries. *Id*. at 3. The complaint alleges that Defendant "fail[ed] to maintain the football playing area in a reasonably safe condition [by]

allowing a hidden defect to remain unrepaired and failed to provide warning of its presence." *Id*. The complaint also alleges that Defendant "fail[ed] to properly supervise" Chad. *Id*.

## II. Standard of Review.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. Rule 56(e) requires the nonmoving party to "designate 'specific facts showing that there is a genuine issue for trial,'" and such facts must be shown by the party's affidavits "or by the 'depositions, answers to interrogatories, and admissions on file.'" *Celotex,* 477 U.S. at 324.

## III. Analysis.

### A. Loss of Consortium.

Plaintiff concedes that he has not presented the requisite facts to show loss of consortium. Doc. 45 at 6. The Court will grant summary judgment on Plaintiff's loss of consortium claim.

### B. Negligence.

To show negligence under the FTCA, Plaintiff must prove the same elements that state law requires for the substantive cause of action. *See Rayonier Inc. v. United States*, 352 U.S. 315, 318 (1957). Under Arizona law, "[t]he elements of actionable negligence are a duty owed to the plaintiff, a breach thereof and an injury proximately caused by the breach." *Wisener v.*

*State of Arizona*, 598 P.2d 511, 512 (Ariz. 1979). The Court concludes that Plaintiff has failed to present sufficient evidence to raise a question of fact on the issue of breach.

### 1.    Defendant's Undisputed Facts.

Defendant's motion for summary judgment is accompanied by a detailed statement of facts. Doc. 44. The statement identifies allegedly undisputed facts that entitle Defendant to summary judgment in this case. Under Local Rule of Civil Procedure 56.1, Plaintiff was required to file an opposing statement of fact setting forth, "for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed." LRCiv 56.1(b). Plaintiff did not do so. As a result, each of the uncontroverted paragraphs of Defendant's statement of facts is "deemed admitted for purposes of the motion for summary judgment." *Id*.

Plaintiff's undisputed statement of facts establishes the following: Tuba City Boarding School had a recess area approximately 40 feet by 100 feet. Doc. 44 ¶ 11. The area was flat and made up of sand, dirt, and fine gravel. *Id*. At the time of the accident, there was some construction occurring at the school, and the recess area was fenced off from the construction. *Id*. ¶ 12. Chad's accident occurred while he was playing in the fenced recess area. *Id*. ¶ 13.

Melvin Pooyouma was the facility manager at the school. *Id*. ¶ 58. His duties included taking care of the buildings and grounds. *Id*. ¶ 59. Approximately five months before Chad's accident, school maintenance personnel added washed sand to the recess area. *Id*. ¶ 60. With the addition of the sand, Mr. Pooyouma observed that the recess area did not get particularly muddy nor hardened following a rain. *Id*. ¶ 61. Mr. Pooyouma performed informal walk-through inspections of the school grounds, including the recess area, on a weekly basis. *Id*. ¶ 62. Mr. Pooyouma walked by the recess area almost daily prior to Chad's accident. *Id*. ¶ 63. Mr. Pooyouma did not observe any safety issues – including tripping hazards or maintenance problems – in the recess area prior to or after the accident. *Id*. ¶ 64.

1    Nor did Mr. Pooyouma recall receiving any complaints about tripping hazards or other
2 safety issues in the recess area before the accident. *Id*. ¶ 65. If any complaints or maintenance
3 issues were reported at the school, including any observed by Mr. Pooyouma, a "work ticket"
4 would have been created and sent to Mr. Pooyouma. *Id*. ¶ 66. Mr. Pooyouma searched the
5 school's records for work tickets for the period of October 2006 through September 2007
6 (Chad's accident occurred in January of 2007), and did not locate any safety issues related to the
7 recess area. *Id*. ¶ 67. Other than Chad's accident, Mr. Pooyouma does not have any knowledge
8 of prior incidents in the recess area where a student was seriously injured or hospitalized. *Id*.
9 ¶ 68. In addition, the school had regular annual health and safety inspections conducted by the
10 Navajo Region, Western Navajo Agency. *Id*. ¶ 69. These inspections did not reveal any safety
11 issues in the recess area. *Id*. ¶ 70.

12    Chad's fifth grade teacher, Florence Tate, provided an affidavit which asserted that "[t]he
13 recess area was relatively flat and consisted of what appeared to me to be a combination of the
14 natural dirt, sand, and a relatively fine gravel or rock." Doc. 44-2 at 3. Mr. Pooyouma provided
15 an affidavit asserting that the recess area "was basically flat" and "a mixture of sand, small
16 gravel (e.g., pea gravel), and the native dirt." *Id*. at 9. Donald Coffland, the principal of the
17 school, provided an affidavit that the recess area "was relatively flat" and consisted of "a
18 combination of the natural dirt, sand, and a relatively fine gravel or rock." Doc. 44-1 at 5. Chad
19 also described the surface of the recess area where he was injured as flat. Doc. 44 ¶ 51. After
20 the accident, Mrs. Tate observed a very small and gradual dip where Chad had fallen. It was no
21 more than two inches in depth. Mrs. Tate believed it could have been made by a shoe. *Id*. ¶ 52.
22 The dip Mrs. Tate observed had no sharp edges and it did not appear to Mrs. Tate to be a
23 tripping hazard. *Id*. ¶ 53. Mrs. Tate did not observe Chad trip on any dips. *Id*. ¶ 54. Chad and
24 other students had been playing in the recess area – for the most part playing football – for
25 approximately five months before the accident occurred. *Id*. ¶ 22.

26    On several occasions before the accident, Mrs. Tate verbally instructed Chad and her
27 other fifth grade students about class rules, including recess conduct. These rules included "no
28 tackle football" and "keep your hands to yourself." *Id*. ¶ 24. Mrs. Tate had also reviewed the

student handbook with her class. The handbook included one of the school's primary rules, which Mrs. Tate reviewed frequently with her students, that students should keep their hands, feet, and objects to themselves. *Id.* ¶ 25. Before Chad's accident, Ms. Windmiller, a department head at the school, also instructed the students on school rules, conduct at recess, and the student handbook. *Id.* ¶ 26. Plaintiff and Chad received the student handbook. *Id.* ¶ 27.

Mrs. Tate did not allow tackle football during recess. *Id.* ¶ 29. Mrs. Tate had observed Chad playing, running, and throwing a football with other students, without incident, during recess prior to the accident. *Id.* ¶ 33. Mrs. Tate was supervising her class, including Chad, during the recess. *Id.* ¶ 37. Mrs. Tate was standing approximately ten feet away from Chad at the time of the accident. *Id.* ¶ 36. Mrs. Tate did not see her students playing tackle football, but just before the accident occurred, she saw Chad jump into the air to catch a pass. *Id.* ¶¶ 38-39. The closest student to Chad was several feet away. *Id* ¶ 40. After watching Chad jump to catch the pass, Mrs. Tate looked away briefly. When she looked back, Chad was on the ground. *Id.* ¶ 41. When asked by Mrs. Tate if he had been tackled by anyone, Chad said "no, I just fell." *Id.* ¶ 42. Chad never told Mrs. Tate that his accident was due to tripping on a dip in the recess area. *Id.* ¶ 43. Ms. Windmiller also spoke to Chad about what happened. Chad told Ms. Windmiller that no one had pushed or tackled him. *Id.* ¶ 44.

In response to Defendant's Interrogatory No. 3, Plaintiff stated that Chad's injury was due to a female student tackling him. *Id.* ¶ 55. During his deposition, Chad testified that he was tackled by a female classmate immediately before he fell to the ground. *Id.* ¶ 46. Chad testified that he had been thrown the football, had caught it, and that a female student grabbed him by the neck and began pulling him down. He dragged her for a few steps before he fell. *Id.* ¶ 47.

Chad was aware that football was a sport in which players can be injured. *Id.* ¶ 31. Plaintiff also knew, before the accident, that Chad was playing football at the school. *Id.* ¶ 32.

**2.    Plaintiff's Evidence.**

Plaintiff's statement of facts opposing summary judgment contains only three brief paragraphs. The Court will review the evidence cited by Plaintiff to determine whether it presents a sufficient question of fact to defeat summary judgment.

1    In describing the incident, Chad testified: "I guess I was kind of like dragging. And I
2 guess somehow, I don't know, my foot caught on something . . . ." Doc. 45 at 3. Chad provided
3 this additional testimony:

4    Q.   And you believe that you may have tripped on something; is that correct?
5    A.   Yes, sir.
6    Q.   Did you see anything that you tripped on?
7    A.   No, sir.
8    Q.   Why do you think you tripped?
9    A.   Because like my foot got trapped on a hole or something.
10   Q.   Did you see a hole?
11   A.   No, sir.
12   Q.   At the time, you were actually being grabbed onto by M___ A___; correct?
13   A.   Yes, sir.
14        * * *
15   Q.   So what you basically remember is that you were tackled by M___ A___, you
16        dragged her a little bit and you went to the ground; is that correct?
17   A.   Yes, sir.

18 Doc. 47 at 10.

19    Plaintiff also presents an Incident Report form completed by Mrs. Tate. In describing the
20 incident, the report says Chad "fell awkwardly while playing football, on his side." Doc. 46-1
21 at 2. The report provides this additional explanation: "While playing football – may have
22 stepped in a dip on the playground." *Id*. Plaintiff does not explain why this report, which
23 constitutes hearsay, would be admissible in evidence. Affording Plaintiff the benefit of the
24 doubt, the Court will assume for purposes of this motion that the report could be admitted as a
25 business record through foundation laid by Mrs. Tate or other school officials at trial.

26    Plaintiff also submits a document titled "Expert Report of George Graham." *Id.* at 10.
27 The report adds nothing to the facts of this case. It expresses opinions conditioned on "[i]f the
28 children were being allowed to play tackle football" and "[i]f the area in which the children were

playing at recess had holes, or dips, or was uneven terrain," but presents no evidence on those issues. *Id*. Moreover, the report completely fails to satisfy the requirements of Rule 26(a)(2)(B). The Court concludes that the unsigned, unsworn, fact-free report adds nothing to the summary judgment analysis.

Plaintiff cites a letter written by Mrs. Tate "To whom it may concern." The letter is not sworn or signed under penalty of perjury and therefore does not constitute an affidavit within the meaning of Rule 56, as discussed with respect to other statements below. The letter also is hearsay. The Court will not consider the letter in deciding this summary judgment motion. [1]

Finally, Plaintiff submits handwritten statements by "John Doe 1" and "Jane Doe 10" suggesting that there were "a lot of dips" in the sand and that Chad "tripped on a ditch." *Id*. at 13-14. The statements are not sworn or signed under penalty of perjury and therefore do not constitute affidavits that may be considered under Rule 56. *See* Rule 56(e)(2) (requiring opposing party to submit "affidavits" or other evidence permitted by Rule 56, which includes depositions or interrogatory answers (Rule 56 (e)(1)); 28 U.S.C. § 1746 (requiring affidavits to be sworn or signed under penalty of perjury); *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) ("In ruling on a motion for summary judgment, a court may substitute an unsworn declaration for a sworn affidavit if the declaration complies with 28 U.S.C. § 1746. But such documents must be based on 'personal knowledge,' Fed.R.Civ.P. 56(e), and must be 'subscribed by' the declarant, 28 U.S.C. § 1746."); *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363 n.3 (6th Cir. 2001) (district court properly disregarded witness statement that was unsworn and not given under penalty of perjury); *Okoye v. The University of Texas Houston Health Science Center*, 245 F.3d 507, 515 (5th Cir. 2001) (unsworn statements are not competent summary judgment evidence); *Steinle v. Warren*, 765 F.2d 95, 100 (7th Cir. 1985) (unsigned and unsworn transcript of interview ineffective to defeat summary judgment); Wright, Miller & Kane, *Federal*

---

[1] Even if considered, the letter adds nothing to the facts of this case. It contains only the following relevant sentence: "[o]ur playground is a large area with various terrain and parts fenced off due to the construction of the new school." *Id*. at 12. It says nothing to support Plaintiff's negligence claim.

1 *Practice and Procedure: Civ 3d* § 2738, at 363 ("unsworn affidavits will be rejected" as insufficient to oppose summary judgment).

### III.     Summary.

The uncontroverted evidence presented by Defendant establishes that the recess field was fenced, relatively flat, and covered by dirt, sand, and small gravel. Washed sand had been added to the field to prevent mud and undue hardening. Formal and informal inspections of the field had revealed no safety hazards. No serious injuries had been reported, and no concerns about safety on the field had been expressed. Chad and his classmates had been playing football on the field for five months, without incident. Plaintiff knew Chad was playing football there. Mrs. Tate, who had instructed the students not to play tackle football and who enforced that rule, was present on the field and near Chad when he injured his leg. Following the accident, Mrs. Tate saw a small, two-inch dip near Chad that appeared to have been made by a shoe. It had no sharp edges and did not appear to be a tripping hazard. Mrs. Tate did not see Chad trip in a dip.

The only evidence Plaintiff has presented to support its negligence case are Chad's deposition testimony that "I guess somehow, I don't know, my foot caught on something," and "like my foot got trapped on a hole or something," as well as the unsworn report's statement that Chad "may have stepped in a dip." Doc. 46. Plaintiff presents only Chad's speculation that his foot caught on something he did not see and the report's speculation about what "may" have happened. Plaintiff has presented no other evidence of a dip or defect in the playing field, no photographs or inspections of the field, no meaningful expert testimony, no deposition testimony concerning observed conditions on the field, and no sworn statements of those who saw the incident. Nor does Plaintiff controvert the evidence that Mrs. Tate had instructed the students not to play tackle football, enforced the rule, and was on the field near Chad and observing the students when the injury occurred.

The Court concludes that a jury considering all of the foregoing evidence could not reasonably find that Defendant was negligent in maintaining the playing field or supervising the children at the time of Chad's injury. Plaintiff, who has been afforded a full opportunity for discovery, has failed to present evidence sufficient for a jury to find in his favor. Because "there

is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson*, 477 U.S. at 249, the Court will enter summary judgment for Defendant.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 43) is **granted**.
2. The Clerk shall terminate this action.

DATED this 14th day of October, 2010.

*David G. Campbell*
David G. Campbell
United States District Judge